WRIGHT, FINLAY & ZAK, LLP
Nichole L. Glowin, Esq.
Nevada Bar No. 14204
7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117
(702) 475-7964; Fax: (702) 946-1345
nglowin@wrightlegal.net
*Attorneys for Secured Creditor, Federal National Mortgage Association ("Fannie Mae")*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MARIA ANGELES COLUCCI,<br><br>                Debtor. | Case No.: 18-15120-leb<br>Chapter: 13<br><br>**OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN #1**<br><br>**Hearing Date: November 15, 2018**<br>**Hearing Time: 1:30 P.M.** |

FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE") ("Secured Creditor" or "FNMA"), secured creditor in the above-entitled Bankruptcy proceeding, hereby submits the following Objection to Confirmation of the Chapter 13 Plan #1 filed by Debtor MARIA ANGELES COLUCCI (hereinafter referred to as the "Debtor"). Secured Creditor currently holds the first position lien secured by the Debtor's primary residence located at 8884 Paseo Ranchero Court, Las Vegas, NV 89147 (hereinafter referred to as the "Property") and is in the process of filing a proof of claim in the above-captioned matter evidencing a total secured claim of $393,173.01 with $39,105.64 due in arrears.

## I. STATEMENT OF FACTS

On or about July 31, 2006, Debtor executed a Note in favor of Sahara Mortgage Corporation ("Lender") in the amount of $300,000.00 which was secured by a first position Deed of Trust ("Deed of Trust") recorded against the Property in the Clark County Recorder's Office ("CCRO") on August 10, 2006, as Instrument No. 20060810-0001112. The Note and Deed of

Trust were subsequently transferred and ultimately were assigned to Secured Creditor FNMA by way of an Assignment ("Assignment") executed on October 21, 2011 and recorded in the CCRO on December 29, 2011, as Instrument No. 201112290001544. True and correct copies of the Note, Deed of Trust and Assignment are attached hereto as **Exhibits 1, 2 and 3** respectively.

On August 28, 2018, Debtor filed the instant Chapter 13 bankruptcy petition in United States Bankruptcy Court for the District of Nevada, Las Vegas Division, and was assigned case number 18-15120-leb ("Bankruptcy Action").

Secured Creditor FNMA is in the process of filing a proof of claim in the Bankruptcy Action for the amounts due under the Note and Deed of Trust. Pursuant to FNMA's records their pre-petition claim approximately totals $393,173.01 with $39,105.64 due in pre-petition arrears comprised of the following amounts:

P&I Payments February 1, 2017-August 1, 2018 (19 pymts) @ $1,567.22: $29,777.18
Escrow Advance Balance: $6,151.12
Corp. Recoverable Balance: $2,095.96
Escrow Shortage: $1,081.38

_____

**TOTAL PRE-PETITION ARREARS DUE: $39,105.64**

 (See a true and correct copy of FNMA's Draft Proof of Claim attached hereto as **Exhibit 4**).

On August 28, 2018, Debtor filed her proposed Chapter 13 Plan #1 (the "Plan") which includes FNMA's claim in Section 4 with alleged post-petition payments of $1,892.37 to be remitted by the Trustee, a cure of pre-petition arrears in the amount of $38,000.00 and a cure of post-petition arrears in the amount of $12,000.00.

## II.    ARGUMENT/OBJECTIONS TO PLAN

**1.    The Plan Should Be Denied Confirmation As It Does Not Satisfy the Full Value Requirement of 11 U.S.C. § 1325(a)(5)(B)(ii)**

FNMA objects to the Plan as it fails to satisfy the full value requirement of 11 U.S.C. §1325(a)(5)(B)(ii). The Plan contains only $38,000.00 in arrears associated with FNMA's claim, however, in fact, $39,105.64 in pre-petition arrearages are due and owing under the Note and Deed of Trust, as is reflected in FNMA's Draft Proof of Claim (See **Exhibit 4**, attached hereto). ///

Accordingly Debtor's Plan must be denied confirmation as Debtor has not proposed a Plan that fully addresses all of her secured claims and secured arrears as required.

### 2.  Debtor's Plan Should Be Denied Confirmation As It Is Not Feasible

One of the requirements for confirmation of a Chapter 13 plan, referred to as the "feasibility requirement", is proof that the debtor will be "able to make all the payments under the plan and to comply with the plan." 11 U.S.C. Section 1325(a)(6).  A review of the record herein confirms that Debtor cannot satisfy her burden under 1325(a)(6) to confirm this or any other plan due to a lack of income. Debtor's Schedule J indicates that Debtor has $200.00 in disposable income to make proposed monthly payments as high as $2,050.00 (See **Exhibit D** attached hereto, Debtor's Schedule J). Debtor's Plan should therefore be denied confirmation as Debtor does not have sufficient income to make her proposed plan payments. Additionally, Debtor's Plan confirmation is contingent upon the sale of the Property; however, Debtor has provided no supporting information or evidence in conjunction with his plan setting forth whether 1) Debtor has hired a realtor; 2) the Property has been placed on the market; 3) the details of the marketing of the Property; 4) the interest in or recent activity concerning the Property and/or any other details to support that the Property will indeed be sold for full value within the proscribed timeframe. Lacking more specific detail Debtor's proposed sale is not a reasonable expectation, and is speculative at best.  In re Gavia, 24 B.R. 573 (9th Cir. BAP 1982) states that unless an event, under which a debtor seeks to make a plan feasible, is likely to occur in the near future the event is too speculative to allow confirmation of a plan. Accordingly, Debtor does not have sufficient income to fund a Plan that addresses all of her secured claims in violation of 11 U.S.C. § 1325(a)(6) and her Plan must therefore be denied confirmation.

### III.    CONCLUSION

Any Chapter 13 Plan proposed by Debtor must provide for and eliminate the Objections specified above in order to be reasonable and to comply with applicable provisions of the Bankruptcy Code.  It is respectfully requested that confirmation of the Debtor's Chapter 13 Plan #1 be denied, or in the alternative, amended to fully provide for FNMA's claim.

WHEREFORE, FNMA prays as follows:

1       (1) That confirmation of the Debtor's Chapter 13 Plan #1 be denied.

2       (2) For such other relief as this Court deems proper.

3  DATED this 11th day of October, 2018.

4                              WRIGHT, FINLAY & ZAK, LLP

6                             */s/ Nichole L. Glowin*

7                              Nichole L. Glowin, Esq.
Nevada Bar No. 14204

8                              7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117

9                              *Attorneys for Secured Creditor,*
*Federal National Mortgage Association*

10                            *("Fannie Mae")*

## CERTIFICATE OF SERVICE

1.      On October 11, 2018, I served the following document(s):

**OBJECTION TO CONFIRMATION CHAPTER 13 PLAN #1**

2.      I served the above-named document(s) by the following means to the persons as listed below:

(Check all that apply)

■ a.    ECF System (You must attach the "Notice of Electronic Filing", or list all persons and address and attach additional paper if necessary)

DAVID M. CROSBY on behalf of Debtor MARIA ANGELES COLUCCI
info@crosby.lvcoxmail.com

PRA RECEIVABLES MANAGEMENT, LLC, Creditor Requesting Notice:
claims@recoverycorp.com

NICHOLE GLOWIN on behalf of Creditor FEDERAL NATIONAL
MORTGAGE ASSOCIATION ("FANNIE MAE")
nglowin@wrightlegal.net; bquon@wrightlegal.net,
jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RICK A. YARNALL on behalf of Chapter 13 Trustee RICK A. YARNALL
ecfmail@LasVegas13.com

UNITED STATES TRUSTEE-LAS VEGAS-CH. 13
USTPRegion17.LV.ECF@usdoj.gov

■ b.    United States mail, postage fully pre-paid (List persons and addresses.  Attach additional paper if necessary)

MARIA ANGELES COLUCCI
8884 PASEO RANCHERO CT.
LAS VEGAS, NV 89147-6054
**DEBTOR**

DAVID M. CROSBY
CROSBY & FOX, LLC
710 S 8TH ST
LAS VEGAS, NV 89101
**COUNSEL FOR DEBTOR**

RICK A. YARNALL
701 BRIDGER AVE., #820
LAS VEGAS, NV 89101
**CHAPTER 13 TRUSTEE**

HONORABLE LAUREL E. BABERO
FOLEY FEDERAL BUILDING
300 LAS VEGAS BOULEVARD SOUTH
LAS VEGAS, NV 89101
**COURT**

☐ c.    Personal Service (List persons and addresses.  Attach additional paper if necessary)
I personally delivered the document(s) to the persons at these addresses:

_____

☐    For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐    For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐ d.    By direct email (as opposed to through the ECF System) (List persons and email addresses.  Attach additional paper if necessary)

Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ e.    By fax transmission (List persons and fax numbers.  Attach additional paper if necessary)

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below.  No error was reported by the fax machine that I used.   A copy of the record of the fax transmission is attached.

☐ f.    By messenger (List persons and addresses.  Attached additional paper if necessary)

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service. (A declaration by the messenger must be attached to the Certificate of Service).

1       I declare under penalty of perjury that the foregoing is true and correct.

2  Signed on this 11th day of October, 2018.

3                                    _/s/ Jodi Miller_

4                                  An employee of Wright, Finlay & Zak, LLP

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Loan No.: ▓▓▓▓▓

# NOTE

MIN: ▓▓▓▓▓
**MERS TELEPHONE: (888) 679-6377**

**July 31, 2006**                           **LAS VEGAS**                           **NEVADA**
[Date]                                          [City]                                          [State]

**8884 PASEO RANCHERO CT, Las Vegas, NEVADA 89147**
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $    **300,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is   **SAHARA MORTGAGE CORPORATION**.  I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of    **7.125%.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.    PAYMENTS**

(A)    **Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **FIRST** day of each month beginning on  **September 1, 2006**.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on **August 1, 2046**,  I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **2551 SOUTH FORT APACHE ROAD, SUITE 101, LAS VEGAS, NEVADA  89117** or at a different place if required by the Note Holder.

(B)    **Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $    **1,891.59**.

**4.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3200 1/01
Page 1 of 3                                                                                 Initials: _MC_

usc3200

# EXHIBIT 1

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A)  **Late Charge for Overdue Payments**

   If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

   (B)  **Default**

   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   (C)  **Notice of Default**

   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   (D)  **No Waiver By Note Holder**

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   (E)  **Payment of Note Holder's Costs and Expenses**

   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. **GIVING OF NOTICES**

   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

   Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS**

   I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. **UNIFORM SECURED NOTE**

    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Maria Colucci_ _____ (Seal)     _____ (Seal)
**MARIA COLUCCI**                      -Borrower                                          -Borrower

Social Security No.: [redacted]

_____ (Seal)     _____ (Seal)
                                       -Borrower                                          -Borrower

*[Sign Original Only]*

Pay to the order of:
Countrywide Bank, N.A.
Without Recourse
SAHARA MORTGAGE CORPORATION

By: _____

Name and Title: ViRgie VinCent, PRESiDENT

Pay to the order of:
Countrywide Home Loans, Inc.
Without Recourse
Countrywide Bank, N.A.
By: _____ Laurie Meder, SVP

Pay to the order of:
Without Recourse
Countrywide Home Loans, Inc.
By: _____ Michele Sjolander, SVP

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 3 of 3

Form 3200 1/01

20060810-0001112

Fee: $35.00
N/C Fee: $0.00

08/10/2006                09:16:17
T20060139883

Requestor:
  SOUTHWEST TITLE

Frances Deane                    RMS
Clark County Recorder    Pgs: 22

Assessor's Parcel Number: **163-20-712-023**
When recorded mail to:
**SAHARA MORTGAGE CORPORATION**
**2551 SOUTH FORT APACHE ROAD, SUITE 101**
**LAS VEGAS, NEVADA 89117**

Mail Tax Statements to:
**MARIA COLUCCI**
**8884 PASEO RANCHERO CT**
Las Vegas, NEVADA 89147
Prepared By:

~~Recording Requested By:~~

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN

MERS TELEPHONE: (888) 679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "**Security Instrument**" means this document, which is dated **July 31, 2006**, together with all Riders to this document.
(B) "**Borrower**" is **MARIA COLUCCI an unmarried woman.** Borrower is the trustor under this Security Instrument.
(C) "**Lender**" is **SAHARA MORTGAGE CORPORATION**. Lender is a corporation organized and existing under the laws of **the State of NEVADA**. Lender's address is **2551 SOUTH FORT APACHE ROAD, SUITE 101, LAS VEGAS, NEVADA 89117**.
(D) "**Trustee**" is **SOUTHWEST TITLE**.
(E) "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "**Note**" means the promissory note signed by Borrower and dated **July 31, 2006**. The Note states that Borrower owes Lender **Three Hundred Thousand And 00/100 Dollars (U.S. $ 300,000.00)** plus

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
Form 3029 1/01

Page 1 of 18

Initials: _____

nvcmertd

# EXHIBIT 2

interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **August 1, 2046.**

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [ ] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Form 3029 1/01

Page 2 of 18

Initials: MC

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County [Type of Recording Jurisdiction] of **Clark** [Name of Recording Jurisdiction]:

**SEE EXHIBIT "A" ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF.**

Parcel ID Number: **163-20-712-023**

which currently has the address of

**8884 PASEO RANCHERO CT**                                                                         [Street]

Las Vegas [City] , Nevada  89147 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

**Form 3029  1/01**

Page 3 of 18

Initials: _____

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Form 3029  1/01

Page 4 of 18

Initials: _____

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

**Form 3029 1/01**

Page 5 of 18

Initials: _____

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Form 3029 1/01

Page 6 of 18

Initials: MC

purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to

NEVADA-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Form 3029 1/01

Page 7 of 18

Initials: _MC_

occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

NEVADA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**

Form 3029 1/01

Page 8 of 18

Initials: _____

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Form 3029 1/01

Page 9 of 18

Initials: _MC_

exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

NEVADA-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

**Form 3029 1/01**

Page 10 of 18

Initials: _____

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"):  (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.  Loan Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Form 3029  1/01

Page 11 of 18

Initials: _MC_____

valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Form 3029 1/01

Page 12 of 18

Initials: _____

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note

NEVADA-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Form 3029 1/01

Page 13 of 18

Initials: _MC_

is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Form 3029 1/01

Initials: MC

NON-UNIFORM COVENANTS.   Borrower and Lender further covenant and agree as follows:

22.  **Acceleration; Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify:  (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located.  Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law.  Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law.  After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.  Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale.  Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order:  (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23.  **Reconveyance.**  Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it.  Such person or persons shall pay any recordation costs.  Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24.  **Substitute Trustee.**  Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder.  Without conveyance of the Property,

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Form 3029  1/01

Page 15 of 18

Initials:  _MC_

the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25.    **Assumption Fee.**  If there is an assumption of this loan, Lender may charge an assumption fee of U.S. **$ 3,000.00**.

NEVADA-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Form 3029  1/01

Page 16 of 18

Initials:  _MC_____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_Maria Colucci_ _____ (Seal)
_____                 MARIA COLUCCI                              -Borrower

_____        _____ (Seal)
                                                                                        -Borrower

_____        _____ (Seal)
                                                                                        -Borrower

_____        _____ (Seal)
                                                                                        -Borrower

NEVADA-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
                                                                           **Form 3029 1/01**

Page 17 of 18

STATE OF NEVADA
COUNTY OF *Clark*

This instrument was acknowledged before me on _July 31, 2006_ by
MARIA COLUCCI,

My Commission Expires: _October 19, 2009_

```
NOTARY PUBLIC
STATE OF NEVADA
County of Clark
HELEN A. HENKE
No: 01-71249-1
My Appointment Expires Oct. 19, 2009
```

NEVADA-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Form 3029  1/01

Page 18 of 18

Initials: _MC_

**Escrow No.**

**Tax Parcel No.**     **163-20-712-023**

## EXHIBIT "A"
### Legal Description

Parcel I:

Lot 61 in Block 2 of TIBURON PHASE 5, as shown by map thereof on file in Book 70, of Plats, Page 73 in the Office of the County Recorder of Clark County, Nevada.

Parcel II:

An easement for ingress/egress over those portions of all lots lying within Tiburon Phase 1, Phase 2 and Phase 5, designated as Private Streets recorded in Book 70 of Plats, Page 6, and recorded in Book 70 of Plats, Page 71, and recorded in Book 70 of Plats, Page 73, respectively, Official Records.

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **31st** day of **July, 2006,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **SAHARA MORTGAGE CORPORATION** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**8884 PASEO RANCHERO CT, Las Vegas, NEVADA  89147**
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the Covenants, Conditions and Restrictions of the **the Covenants, Conditions and Restrictions of the Tiburon** (the "Declaration"). The Property is a part of a planned unit development known as

**Tiburon**
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association" ) and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the

**MULTISTATE PUD RIDER** - Single Family -   **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                                                                      **Form 3150 1/01**

Page 1 of 3

Initials: _MC_____

usc3150

periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C.  Public Liability Insurance.**  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.  Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E.  Lender's Prior Consent.**  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.  Remedies.**  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of

MULTISTATE PUD RIDER - Single Family -   **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                                                    **Form 3150 1/01**

Page 2 of 3

Initials: _MC_____

payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_Maria Colucci_ _____ (Seal)    _____ (Seal)
MARIA COLUCCI                -Borrower    -Borrower


_____ (Seal)    _____ (Seal)
                       -Borrower    -Borrower


**MULTISTATE  PUD  RIDER** - Single  Family -    **Fannie  Mae/Freddie  Mac  UNIFORM INSTRUMENT**                                    Form 3150 1/01
                                    Page 3 of 3

Inst #: **201109150000795**

Fees: $15.00

N/C Fee: $0.00

09/15/2011 09:28:21 AM

Receipt #: 913637

Requestor:

CORELOGIC

Recorded By: MJM   Pgs: 2

**DEBBIE CONWAY**

CLARK COUNTY RECORDER

Recording Requested By:
**Bank of America**
Prepared By: **Lori Fitch**
**888-603-9011**
When recorded mail to:
CoreLogic
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

Tax ID:      **163-20-712-023**
Property Address:
**8884 Paseo Ranchero Ct**
**Las Vegas, NV 89147-6054**

9/6/2011                          This space for Recorder's use

MIN #:                          MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP** whose address is **13150 WORLD GATE DR, HERNDON, VA 20170** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:      **SAHARA MORTGAGE CORPORATION**
Made By:             **MARIA COLUCCI AN UNMARRIED WOMAN**
Trustee:             **SOUTHWEST TITLE**
Date of Deed of Trust: **7/31/2006**      Original Loan Amount: **$300,000.00**

Recorded in **Clark County,NV** on: **8/10/2006**, book **N/A**, page **N/A** and instrument number **20060810-0001112**

I the undersigned hereby affirm that this document submitted for recording does not contain the social security number of any person or persons.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
09/10/11

                          **MORTGAGE ELECTRONIC REGISTRATION**
                          **SYSTEMS, INC.**

                          By: _____

                          **Edward Gallegos, Assistant Secretary**

EXHIBIT 3

State of **California**
County of **Ventura**

On _Sept. 10, 2011_ before me, _Deeann Westfall Cortes_, Notary Public, personally appeared **Edward Gallegos**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Deeann Westfall Cortes_

Notary Public: _____    (Seal)
My Commission Expires: _____
                          _Janu_

DEE ANN WESTFALL CORTES
Commission # 1805013
Notary Public - California
Los Angeles County
My Comm. Expires Jul 1, 2012

_Assignment of Deed of trust: Maria Colucci_

Inst #: 201112290001544
Fees: $17.00
N/C Fee: $25.00
12/29/2011 11:15:51 AM
Receipt #: 1020816
Requestor:
BANK OF AMERICA NA
Recorded By: SOL  Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

Tax Parcel: 163-20-712-023

Recording requested by:
BANK OF AMERICA N.A.
SUCCESSOR BY MERGER TO BAC
HOME LOANS SERVICING LP

When recorded mail to:
Bank of America, N.A.
DOCUMENT PROCESSING MAIL
CODE:TX2-979-01-19
4500 AMON CARTER BLVD
FORT WORTH, TX 76155
Attn: ASSIGNMENT UNIT

Mail tax statement to:
Bank of America, N.A.
1757 Tapo Canyon Road, #300
Simi Valley, CA 93063

CORPORATION ASSIGNMENT OF DEED OF TRUST

Doc. ID#
Commitment#

For value received, the undersigned, BANK OF AMERICA N.A., SUCCESSOR BY
MERGER TO BAC HOME LOANS SERVICING LP. 1800 TAPO CANYON ROAD, SIMI VALLEY, CA
93063, hereby grants, assigns and transfers to:
FEDERAL NATIONAL MORTGAGE ASSOCIATION
14221 DALLAS PARKWAY  STE 1000 DALLAS, TX 75254

All beneficial interest under that certain Deed of Trust dated  7/31/06,
executed by: MARIA COLUCCI  Trustor as per TRUST DEED recorded as Instrument
No. 2006081O-0001112 on 8/10/06 in Book                Page                of
official records in the County Recorder's Office of CLARK COUNTY, NEVADA.
Original Mortgage $300,000.00
8884 PASEO RANCHERO CT, LAS VEGAS, NV 89147

Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Deed of Trust.

Dated: 10/21/2011      BANK OF AMERICA N.A., SUCCESSOR BY MERGER TO BAC HOME
                       LOANS SERVICING LP

                       By
                          PABLA ZUNIGA, ASSISTANT VICE PRESIDENT .

State of California
County of Ventura

On 10-21-2011 before me, IRMA DIAZ , Notary Public, personally appeared PABLA
ZUNIGA, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her their
authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature:
           IRMA DIAZ

IRMA DIAZ
Commission # 1903988
Notary Public - California
Ventura County
My Comm. Expires Sep 13, 2014

Prepared by: JUAN M SOTO
1800 Tapo Canyon Road,
Simi Valley, CA 93063
Phone#: (213) 345-1562

Contact Federal National Mortgage Association
for this instrument c/o Seterus, Inc., 14523 SW Millikan
Way # 200, Beaverton, OR 97005, telephone # 1-866-570-5277,
which is responsible for receiving payments.

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor 1</td><td>MARIA ANGELES COLUCCI</td></tr>
<tr><td>Debtor 2<br>(Spouse, if filing)</td><td></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>District of Nevada</td></tr>
<tr><td>Case number</td><td>18-15120-leb</td></tr>
</table>

Official Form 410

# Proof of Claim

4/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE")
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Federal National Mortgage Association ("Fannie Mae")<br>c/o Seterus, Inc., servicer<br>Name | Name |
| P.O. Box 1047<br>Number      Street | Number      Street |
| Hartford          CT          06143<br>City          State          ZIP Code | City          State          ZIP Code |
| Contact phone (888) 952-7387 | Contact phone _____ |
| Contact email _____ | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____    Filed on _____
MM  /  DD  /  YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____



EXHIBIT 4

Official Form 410          **Proof of Claim**          page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 9 4 4 2

**7. How much is the claim?**  $ 393,173.01 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned-Real Property

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

Nature of property: 8884 Paseo Ranchero Court, Las Vegas, NV 89147

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: Recorded Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:  $_____

Amount of the claim that is secured:  $ 393,173.01

Amount of the claim that is unsecured:  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:  $ 39,105.64

Annual Interest Rate (when case was filed) 4.125 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**  $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:    Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date ___10/02/2018___
                  MM / DD / YYYY

/s/ Nichole L. Glowin
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Nichole | Lynn | Glowin | (SBN 14204) |
|---|---|---|---|---|
| | First name | Middle name | Last name | |

Title        Attorney for Creditor

Company      _____
             Identify the corporate servicer as the company if the authorized agent is a servicer.

Address      7785 W. Sahara Ave., Suite 200
             Number        Street

             Las Vegas                          NV        89117
             City                               State     ZIP Code

Contact phone  (702) 475-7964              Email  nglowin@wrightlegal.net

---

# Mortgage Proof of Claim Attachment

(04/16)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number | 18-15120-leb | Principal balance: | $360,294.85 | Principal & interest due: | $29,777.18 | Principal & interest: | $1,567.22 |
| Debtor 1: | Maria Angeles Colucci | Interest due: | $24,631.08 | Prepetition fees due: | $2,095.96 | Monthly escrow: | $289.74 |
| Debtor 2: | | Fees, costs due: | $2,095.96 | Escrow deficiency for funds advanced: | $6,151.12 | Private mortgage insurance: | $0.00 |
| Last 4 digits to identify: | 9442 | Escrow deficiency for funds advanced: | $6,151.12 | Projected escrow shortage: | $1,081.38 | Total monthly payment: | $1,856.96 |
| Creditor: | Federal National Mortgage Association ("Fannie Mae") | Less total funds on hand: | $0.00 | Less funds on hand: | $0.00 | | |
| Servicer: | Seterus, Inc. | Total debt: | $393,173.01 | Total prepetition arrearage: | $39,105.64 | | |
| Fixed accrual/daily simple interest/other: | 4.125 % (Fixed Rate) | | | | | | |

## Part 5: Loan payment History from First Date of Default

| A. Transaction Date | B. Contractual payment amount | Account Activity | | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | |
| | | C. Funds received | D. Amount incurred | | | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N O. Escrow balance | P. Fees / charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/13/17 | $1,892.59 | $1,892.59 | | Payment | 02/01/17 | $0.00 | $318.88 | $1,248.34 | $325.37 | $0.00 | $0.00 | $362,835.85 | ($444.92) | $0.00 | $0.00 |
| 01/19/17 | | | $835.00 | Insurance Disburse | 02/01/17 | $0.00 | $0.00 | $0.00 | ($835.00) | $0.00 | | $362,835.85 | ($1,279.92) | $0.00 | $0.00 |
| 02/01/17 | $1,892.59 | | | Contractual Payment Due | 02/01/17 | $1,892.59 | | | | | | $362,835.85 | ($1,279.92) | $0.00 | $0.00 |
| 02/10/17 | | | $562.88 | County Tax Disburse | 02/01/17 | $1,892.59 | $0.00 | $0.00 | ($562.88) | $0.00 | $0.00 | $362,835.85 | ($1,842.80) | $0.00 | $0.00 |
| 02/16/17 | | | $78.36 | Late Charge | 02/01/17 | $1,892.59 | $0.00 | $0.00 | $0.00 | $78.36 | $0.00 | $362,835.85 | ($1,842.80) | $78.36 | $0.00 |
| 03/01/17 | $1,892.59 | | | Contractual Payment Due | 02/01/17 | $3,785.18 | | | | | | $362,835.85 | ($1,842.80) | $78.36 | $0.00 |
| 03/16/17 | | | $78.36 | Late Charge | 02/01/17 | $3,785.18 | $0.00 | $0.00 | $0.00 | $78.36 | $0.00 | $362,835.85 | ($1,842.80) | $156.72 | $0.00 |
| 04/01/17 | $1,892.59 | | | Contractual Payment Due | 02/01/17 | $5,677.77 | | | | | | $362,835.85 | ($1,842.80) | $156.72 | $0.00 |
| 04/12/17 | | | $15.00 | Property Inspection | 02/01/17 | $5,677.77 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $362,835.85 | ($1,842.80) | $171.72 | $0.00 |
| 04/17/17 | | | $78.36 | Late Charge | 02/01/17 | $5,677.77 | $0.00 | $0.00 | $0.00 | $78.36 | $0.00 | $362,835.85 | ($1,842.80) | $250.08 | $0.00 |
| 05/01/17 | $1,892.59 | | | Contractual | 02/01/17 | $7,570.36 | | | | | | $362,835.85 | ($1,842.80) | $250.08 | $0.00 |

| Date | Contractual Payment Amount | Amount Incurred | Description | Contractual Due Date | Prin, Int & Esc Past Due | Amount to Principal | Amount to Escrow | Amount to Interest | Amount to Fees | Principal Balance | Escrow Balance | Fees / Charges Balance | Unapplied Funds |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/16/17 | | $78.36 | Late Charge | 02/01/17 | $7,570.36 | $0.00 | $0.00 | $0.00 | $78.36 | $362,835.85 | ($1,842.80) | $328.44 | $0.00 |
| 05/18/17 | | $15.00 | Property Inspection | 02/01/17 | $7,570.36 | $0.00 | $0.00 | $0.00 | $15.00 | $362,835.85 | ($1,842.80) | $343.44 | $0.00 |
| 06/01/17 | $1,874.27 | | Contractual Payment Due | 02/01/17 | $9,444.63 | $0.00 | $0.00 | | | $362,835.85 | ($1,842.80) | $343.44 | $0.00 |
| 06/14/17 | | $15.00 | Property Inspection | 02/01/17 | $9,444.63 | $0.00 | $0.00 | $0.00 | $15.00 | $362,835.85 | ($1,842.80) | $358.44 | $0.00 |
| 07/01/17 | $1,874.27 | | Contractual Payment Due | 02/01/17 | $11,318.90 | $0.00 | $0.00 | | | $362,835.85 | ($1,842.80) | $358.44 | $0.00 |
| 07/12/17 | | $15.00 | Property Inspection | 02/01/17 | $11,318.90 | $0.00 | $0.00 | $0.00 | $15.00 | $362,835.85 | ($1,842.80) | $373.44 | $0.00 |
| 07/26/17 | | $457.50 | Legal Fees Trustee | 02/01/17 | $11,318.90 | $0.00 | $0.00 | $0.00 | $457.50 | $362,835.85 | ($1,842.80) | $830.94 | $0.00 |
| 08/01/17 | $1,874.27 | | Contractual Payment Due | 02/01/17 | $13,193.17 | $0.00 | $0.00 | | | $362,835.85 | ($1,842.80) | $830.94 | $0.00 |
| 08/04/17 | | $831.40 | County Tax Disburse | 02/01/17 | $13,193.17 | $0.00 | ($831.40) | $0.00 | $0.00 | $362,835.85 | ($2,674.20) | $830.94 | $0.00 |
| 08/17/17 | | $15.00 | Property Inspection | 02/01/17 | $13,193.17 | $0.00 | $0.00 | $0.00 | $15.00 | $362,835.85 | ($2,674.20) | $845.94 | $0.00 |
| 09/01/17 | $1,874.27 | | Contractual Payment Due | 02/01/17 | $15,067.44 | $0.00 | $0.00 | | | $362,835.85 | ($2,674.20) | $845.94 | $0.00 |
| 09/13/17 | | $15.00 | Property Inspection | 02/01/17 | $15,067.44 | $0.00 | $0.00 | $0.00 | $15.00 | $362,835.85 | ($2,674.20) | $860.94 | $0.00 |
| 09/22/17 | | $577.52 | County Tax Disburse | 02/01/17 | $15,067.44 | $0.00 | ($577.52) | $0.00 | $0.00 | $362,835.85 | ($3,251.72) | $860.94 | $0.00 |
| 10/01/17 | $1,874.27 | | Contractual Payment Due | 02/01/17 | $16,941.71 | $0.00 | $0.00 | | | $362,835.85 | ($3,251.72) | $860.94 | $0.00 |
| 10/11/17 | | $15.00 | Property Inspection | 02/01/17 | $16,941.71 | $0.00 | $0.00 | $0.00 | $15.00 | $362,835.85 | ($3,251.72) | $875.94 | $0.00 |
| 11/01/17 | $1,874.27 | | Contractual Payment Due | 02/01/17 | $18,815.98 | $0.00 | $0.00 | | | $362,835.85 | ($3,251.72) | $875.94 | $0.00 |
| 11/16/17 | | $15.00 | Property Inspection | 02/01/17 | $18,815.98 | $0.00 | $0.00 | $0.00 | $15.00 | $362,835.85 | ($3,251.72) | $890.94 | $0.00 |
| 12/01/17 | $1,874.27 | | Contractual Payment Due | 02/01/17 | $20,690.25 | $0.00 | $0.00 | | | $362,835.85 | ($3,251.72) | $890.94 | $0.00 |
| 12/12/17 | | $577.52 | County Tax Disburse | 02/01/17 | $20,690.25 | $0.00 | ($577.52) | $0.00 | $0.00 | $362,835.85 | ($3,829.24) | $905.94 | $0.00 |
| 01/01/18 | $1,874.27 | | Contractual Payment Due | 02/01/17 | $22,564.52 | $0.00 | $0.00 | | | $362,835.85 | ($3,829.24) | $905.94 | $0.00 |
| 01/10/18 | | $15.00 | Property Inspection | 02/01/17 | $22,564.52 | $0.00 | $0.00 | $0.00 | $15.00 | $362,835.85 | ($3,829.24) | $920.94 | $0.00 |
| 01/18/18 | | $880.00 | Insurance Disburse | 02/01/17 | $22,564.52 | $0.00 | ($880.00) | $0.00 | $0.00 | $362,835.85 | ($4,709.24) | $920.94 | $0.00 |
| 02/01/18 | $1,874.27 | | Contractual Payment Due | 02/01/17 | $24,438.79 | $0.00 | $0.00 | | | $362,835.85 | ($4,709.24) | $920.94 | $0.00 |
| 02/05/18 | | $577.52 | County Tax Disburse | 02/01/17 | $24,438.79 | $0.00 | ($577.52) | $0.00 | $0.00 | $362,835.85 | ($5,286.76) | $920.94 | $0.00 |
| 02/14/18 | | $15.00 | Property Inspection | 02/01/17 | $24,438.79 | $0.00 | $0.00 | $0.00 | $15.00 | $362,835.85 | ($5,286.76) | $935.94 | $0.00 |
| 02/14/18 | $2,541.00 | | Principal Payment | 02/01/17 | $26,313.06 | $2,541.00 | $0.00 | $0.00 | $0.00 | $360,294.85 | ($5,286.76) | $935.94 | $0.00 |
| 03/01/18 | $1,874.27 | | Contractual Payment Due | 02/01/17 | $26,313.06 | $0.00 | $0.00 | | | $360,294.85 | ($5,286.76) | $935.94 | $0.00 |
| 03/14/18 | | $15.00 | Property Inspection | 02/01/17 | $26,313.06 | $0.00 | $0.00 | $0.00 | $15.00 | $360,294.85 | ($5,286.76) | $950.94 | $0.00 |
| 04/01/18 | $1,874.27 | | Contractual Payment Due | 02/01/17 | $28,187.33 | $0.00 | $0.00 | | | $360,294.85 | ($5,286.76) | $950.94 | $0.00 |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/18/18 | | $15.00 | Property Inspection | 02/01/17 | $28,187.33 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $360,294.85 | ($5,286.76) | $965.94 | $0.00 |
| 05/01/18 | $1,874.27 | | Contractual Payment Due | 02/01/17 | $30,061.60 | | | | | $0.00 | $360,294.85 | ($5,286.76) | $965.94 | $0.00 |
| 05/16/18 | | $15.00 | Property Inspection | 02/01/17 | $30,061.60 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $360,294.85 | ($5,286.76) | $980.94 | $0.00 |
| 06/01/18 | $1,886.48 | | Contractual Payment Due | 02/01/17 | $31,948.08 | | | | | $0.00 | $360,294.85 | ($5,286.76) | $980.94 | $0.00 |
| 06/04/18 | | $250.00 | Recording Fee | 02/01/17 | $31,948.08 | $0.00 | $0.00 | $0.00 | $250.00 | $0.00 | $360,294.85 | ($5,286.76) | $1,230.94 | $0.00 |
| 06/04/18 | | $40.00 | Recording Fee | 02/01/17 | $31,948.08 | $0.00 | $0.00 | $0.00 | $40.00 | $0.00 | $360,294.85 | ($5,286.76) | $1,270.94 | $0.00 |
| 06/04/18 | | $22.52 | Certified Mail Fee | 02/01/17 | $31,948.08 | $0.00 | $0.00 | $0.00 | $22.52 | $0.00 | $360,294.85 | ($5,286.76) | $1,293.46 | $0.00 |
| 06/04/18 | | $457.50 | Legal Fees Trustee | 02/01/17 | $31,948.08 | $0.00 | $0.00 | $0.00 | $457.50 | $0.00 | $360,294.85 | ($5,286.76) | $1,750.96 | $0.00 |
| 06/04/18 | | $300.00 | Title Fee | 02/01/17 | $31,948.08 | $0.00 | $0.00 | $0.00 | $300.00 | $0.00 | $360,294.85 | ($5,286.76) | $2,050.96 | $0.00 |
| 06/20/18 | | $15.00 | Property Inspection | 02/01/17 | $31,948.08 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $360,294.85 | ($5,286.76) | $2,065.96 | $0.00 |
| 07/01/18 | $1,886.48 | | Contractual Payment Due | 02/01/17 | $33,834.56 | | | | | $0.00 | $360,294.85 | ($5,286.76) | $2,065.96 | $0.00 |
| 07/18/18 | | $15.00 | Property Inspection | 02/01/17 | $33,834.56 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $360,294.85 | ($5,286.76) | $2,080.96 | $0.00 |
| 07/26/18 | | $864.36 | County Tax Disburse | 02/01/17 | $33,834.56 | $0.00 | $0.00 | ($864.36) | $0.00 | $0.00 | $360,294.85 | ($6,151.12) | $2,080.96 | $0.00 |
| 08/01/18 | $1,886.48 | | Contractual Payment Due | 02/01/17 | $35,721.04 | | | | | $0.00 | $360,294.85 | ($6,151.12) | $2,080.96 | $0.00 |
| 08/14/18 | | $15.00 | Property Inspection | 02/01/17 | $35,721.04 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $360,294.85 | ($6,151.12) | $2,095.96 | $0.00 |